FILED

2008 FEB 15  PM 12: 52

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KNH_____DEPUTY

Joseph Page
P.O. Box 757
La Jolla, CA 92038
858 699 6015

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joseph Page<br>            Plaintiff,<br><br>        vs.<br><br><br>Ann Banks,<br>Christopher Green, and<br>AnestaWeb Corporation,<br>            Defendants. | Case No. 07 CV 2254 JM (BLM)<br><br><br>FIRST AMENDED COMPLAINT<br><br>FOR<br><br>TRADEMARK INFRINGEMENT, and<br><br>ACPA CYBERSQUATTING |

Plaintiff Joseph Page alleges as follows:

## PARTIES

1.      Joseph Page ("PAGE") is an individual person and resident of California.   Christopher Green ("GREEN") is a person and resident of Broward County, Florida.   Ann Banks ("BANKS") is a person and resident of Broward County, Florida.   AnestaWeb Inc., ("A-WEB") is a corporation under the laws of the Sunshine State of Florida.

## JURISDICTION AND VENUE

1.      This action for trademark infringement under the Lanham Act, 15 U.S.C. §
1051 *et seq*.; 15 U.S.C. § 1114(a); dilution under the Lanham Act, 15 U.S.C. § 1125(c), arising
from Defendant's unauthorized use of PAGE's trademarks: "Couture Today"; and further relief as
provided in the AntiCybersquatting Consumer Protection Act of 1999 ("ACPA"), Pub. L. 106-113
§§3001 et seq.   As a federal question, this case is properly heard by the Federal Court as Federal
Court has subject matter jurisdiction.

## INTRODUCTION

2.      For hundreds of years, the body of law in the United States providing for ownership of
trade names is characterized as Trademark Law.   With the advent of the Internet, late coming
'cybersquatters' are those who decide to ignore and set aside these well established principles and
play by made up rules of the wild, wild west.   Cybersquatters attempt to effect 'ownership' of a
trade name merely by paying a few dollars and registering a name as an Internet domain name.
No review, no examination, and no due process, they hold other legitimate business operators at
high ransom trying to extort monies from them.   The case at bar arises between a trademark owner
who properly followed procedure to secure an ownership interest in a trade name and
cybersquatters who ignore all provision of trademark law in favor of a misguided belief that
registration of a domain name permits them to extort money from those who follow the more
cumbersome, expensive, but legitimate path through the United States Patent and Trademark
Office.

## FIRST CAUSE OF ACTION – CYBERSQUATTING

3.      On April 4th, 2007,   Plaintiff PAGE registered in the United States Patent and Trademark
Office an application having serial number 77149057 for the Trademark **"Couture Today"**.

4.      On April 5th, 2007, Plaintiff PAGE registered in the common databases of Internet domain

names the domain name: **"couturetoday.net"** with intent to, and then did, provide business services including fashion related news reporting and advertising on a website associated with that domain name.   PAGE uses the trademark **"Couture Today"** in conjunction with his website and goods and services offered including advertising services for sale therein.

5.     On April 23rd , 2007 and dates prior thereto, Defendants, including particularly Defendant GREEN, effected a written offer for sale of the domain name **"couturetoday.com"**; a domain name *identical* in the prefix, or at least confusingly similar to Plaintiff PAGE's trademark.   On same date, nameservers **ns1.nameserve.net** and **ns2.nameserve.net** associated with the domain name **'couturetoday.com'** as provided by register.com domain name registrar were assigned with records ("A" type) having a value which directed HTTP web requests to a 'parked' or 'placeholder' web page via URL (uniform resource locator) forwarding mechanisms.   No actual website was ever served on dates prior to Defendants' offer of sale for that domain name which corresponds to PAGE's distinctive trademark was made.   As such, Defendants and each of them have not trademark rights nor other legitimate interests in the domain name; other than bad faith intentions to sit and wait until an honest businessman begins to trade on the name whereafter Defendants can extort monies from them via the 'sale' of domain name transfer; a classic cybersquatter position.

6.     Seven months later, on about November 19, 2007 another offer for sale was effected by Defendants with regard to the **"couturetoday.com"** domain name.   On that date, the domain name remained without connection to any legitimate website service and continued to have no functioning website associated therewith other than a forwarded 'parked' page.

7.     In a continued act of bad faith, Defendants intentionally caused registration identity records, particularly administrative contact fields of the registration to re in at least one line – "This domain name is for sale".   At Defendant's domain name registrar, "register.com", an administration contact field is provided as "Company/Organization".   Instead of putting a company or organization name in that field, Defendants put the indicia to announce their intention to sell the domain name: "This domain name is for sale"; the domain address having no corresponding web site at times up to commencement of this litigation.

8.      On November 26th, 2007 at 14:13 PST, Plaintiff PAGE placed a telephone call to Defendant GREEN to notify GREEN of PAGE's intellectual property rights including trademark rights to **Couture Today** and similar domain names and demanded GREEN transfer domain name 'couturetoday.com' to PAGE and quit his illegal cybersquatting activities.

9.      In response to that telephone call, exactly one day after on November 27, 2007, Defendants GREEN, BANKS and A-WEB did cause to be served *a new web site* associated with domain name 'couturetoday.com' and the fashion services of Defendant BANKS in a thinly veiled and bad faith attempts to provide 'legitimacy' to the sham by actually hosting a functioning website while quitting the 'parked' nature of the domain name.

10.     Defendants GREEN or BANKS or either of them, in cooperation and concert with A-WEB altered the records domain name registrar (register.com) to include new nameservers and further arranged those nameservers to point to a web server computer having the new sham web site - the new nameservers being those controlled and owned by defendant A-WEB.   The sham web site which initiated service *only after* PAGE contacted GREEN about the name, is hosted on defendant A-WEB servers.

11.     In further and continued acts of bad faith, Defendants altered their domain name registrar administrative contact records.    In this regard, the records were adjusted to omit the "for sale" notice after commencement of this complaint.    It is widely known by cybersquatters that offers for sale are sometimes fatal in claims for ownership of names - and Defendants wanted to conceal their previous position whereby they were openly willing to sell the name, once they understood a contest was mounting.

12.     In yet another bad faith and *fraudulent* attempt to conceal the true nature of the domain name registration, Defendants and each of them conspired to place, and then did place a false copyright notice on their sham web site.   On February 9, 2008 and some dates prior thereto, but not before November 28, 2007 an updated sham web site was prepared by Defendants and is presently being served as of the date of this pleading.   That web site includes said false copyright notice.   The copyright notice includes the date/year 2000.   Defendants placed the false copyright

notice in a further attempt to "backdate" their sham web site.   The copyright notice does not in fact correspond to any genuine copy which might be entitled copyright protection and warrant such notice.   Rather, it is yet another mere artifice to trick and deceive this Court into believing Defendant cybersquatters web site was in existence prior to initiation of this action.

13.    Defendant GREEN is a renown Cybersquatter squatting on a great plurality of domain names registered, offered for sale, and not in service via any functional web site.   Some example domain names among the many include: "Anesthesia-Assistant.com"; "Anesthesia-Assistants.com"; "AnesthesiaAssistant.com"; "AnesthesiaAssistant.org"; "AnesthesiaDirectory.com"; "AnesthesiaMeds.com"; "AnesthesiaNews.com"; "AnesthesiaWebHosting.com"; "Anesthesiologist-Assistant.com"; "Anesthetist.com"; "AnesthetistAssistant.com".   These are all domain names of a single group characterized as relating to anesthesiology have each been offered for sale in various form.   Defendants registration of multiple domain names is known by them to be identical or confusingly similar to distinctive marks of others.

14.    It is not only anesthesiology domain names Defendant GREEN is known to traffic, but rather he also traffics domain names in fashion, and airline industries.   Examples include at least: "couturetoday.com", and "airafare.com".   There are a great plurality of other domain names as GREEN is a longtime profiteer who sits on these registrations waiting for good businessmen to come into his trap whence he serves them with his extortion to exact an unearned profit tending to interrupt good and genuine commerce.

15.    Defendant GREEN registered the domain name '**couturetoday.com**' on Jun 18th, 2000, a time *AFTER* AntiCybersquatting Consumer Protection Act was signed into law making special damages available and appropriate.

16.    In an independent act of bad faith, Defendant GREEN has directly refused PAGE's request of him to quit the domain name registration and therefore has prevented the rightful trademark owner from effectively using his mark as a domain name and damages relating to continued and illegal possession of the domain name has adversely and materially affected PAGE's business, the

damages continue to accrue each day.

17.    In another act of bad faith, Defendants GREEN and Defendant BANKS are presently engaged in attracting consumers via their sham website by creating a likelihood of confusion with regard to Plaintiff's mark.

18.    Defendant GREEN has no real, actual, express or legitimate trademark interest in the name: **'Couture Today'**

19.    Defendants do not have any formal registration of trademarks relating to the term **"Couture Today"** in Florida, or in any state trademark office, nor any registration in the United States Patent and Trademark Office; nor published trademark activity.   All matter put forth by Defendants was generated *after* they became aware of this legal action and amounts to no more than contrived shams to deceive the Court.

20.    In yet another bad faith action, Defendants failed to maintain accurate and complete contact information on records via the "whois" database thus in part concealing his correct identity.   Against decent order expected of legitimate business operators, Defendants GREEN and BANKS engaged an effective campaign to duck service of process and this honorable Federal Court's summons, further damaging Plaintiff in the both time and money.

21.    **"Couture Today"** is not a legal name of Defendant GREEN, Defendant BANKS, Defendant A-WEB, or any legal name of any of the businesses they own or operate.

22.    Prior to November 27, 2007, and dates thereafter, Defendants did not use the domain name in connection with any bona fide offering of any good or services.

23.    Defendants do not use **"Couture Today"** in conjunction with any noncommercial or "fair use" activity in a site accessible under the domain name, or in any other place or medium.

24.    Defendants do not use **"Couture Today"** in conjunction with any parody activity in a site

accessible under the domain name, or in any other place or medium.

25.    Defendants have repeatedly offered to sell over a period of many months the domain name **'couturetoday.com'** all the while the address remained disconnect with respect to any legitimate web server or web site.

26.    By Defendant's deploying a sham web site at www.couture today.com, Defendants intend to divert customers from legitimate trademark owner PAGE's web site (www.couturetoday.net) in a manner that could harm goodwill represented by the mark causing at least a likelihood of confusion as to the source of services, affiliation or endorsement.

27.    In further attempts to conceal the true nature of their cybersquatting position, Defendants did in bad faith apply fraudulent and false copyright notices with improper dates to material presented as a web page in conjunction with the address www.couturetoday.com.


## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND DILUTION OF MARKS

28.    In this second and separate cause of action, Plaintiff PAGE does and hereby alleges again those allegations set forth above in the first cause of action, paragraphs 1 – 20 and incorporates those allegations by reference as if they were separately set forth here.

29.    PAGE (and Integrity News Media, Inc.) have ownership interests in the distinctive mark: "Couture Today".

30.    In bold and prominent letters at the top of a web page the brand **'CoutureToday'** is associated with Defendant BANKS purported 'shopping' services – thus constituting infringement of Plaintiff PAGE's trademark.   Defendant BANKS is not actually a 'professional shopper' and the services offered are of such nature they are highly likely to never be consumed by anyone – further indicating the web site is but a bogus scam.

31.    Defendant A-WEB by way of its officers, agents, assignees, and facility did cause to be published and does maintain continuously since November 27, 2007 to this even date advertisements having therein Plaintiff's registered mark.

32.    Since becoming aware of PAGE's ownership position of the "**Couture Today**" mark, Defendants have used that mark in commerce and have *willfully infringed* PAGE's trademark rights.

33.    Defendant's use of **Couture Today** in a commercial setting is used in a manner which is likely to cause confusion, mistake, or to deceive those who seek the true services offered by PAGE to which the mark is associated and identified.

34.    Defendants mark is indistinguishable with regard to the registered mark, and is comprised of the precise spelling and arrangement of words.

35.    Both PAGE's registered mark and Defendant's use of that mark are very closely related in the fashion industry - PAGE uses his mark for fashion news reporting, and Defendant's use their mark for fashion shopping services.

36.    The commercial channels in which trade is effected are similar between Defendants and the trademark owner PAGE.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PAGE requests *Jury Trial* and the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants and each of them

committed the alleged violations of Lantham Act and more particularly the AntiCybersquatting

Consumer Protection Act.

## II.

Issue orders, in a form consistent with the Federal Rules of Civil Procedure, temporarily,

preliminarily, and permanently enjoining each defendant and their officers, agents, Internet service

providers, servants, employees, and attorneys, and those persons in active concert or participation

with any of them, who receive actual notice of the order by personal service or otherwise, and each

of them, from continuing registration of the domain name 'couturetoday.com' to the benefit of

defendants.   Further, issue an order transferring registration of the domain name

'couturetoday.com' to Plaintiff PAGE.

## III.
Order defendants to destroy all matter, commercial materials, website code, relating to
Couture Today.

## IV.

Award actual damages, in an amount to be determined at jury trial in favor of Plaintiff

PAGE.

## V.

Award recovery of Defendant's profits from all activity taken up as result of

publishing a website from Nov 27th 2007.

## VI.

Award *enhanced damages* 3 times the actual damages, costs, and attorney's fees.

## VII.

Award Plaintiff Page statutory damages in the amount of $100,000 in lieu of actual damages.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: February 15, 2007

Joseph Page

Plaintiff