

Joseph Page
P.O. Box 757
La Jolla, CA 92038
858 699 6015
jpage@josephpage.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of CALIFORNIA

| | |
|---|---|
| JOSEPH PAGE<br><br>　　　Plaintiff,<br><br>vs.<br><br>ANN BANKS,<br><br>CHRISTOPHER GREEN, and<br><br>ANESTAWEB Corporation,<br><br>　　　Defendants. | Case No. 07 CV 2254 JM (BLM)<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSITION TO MOTION TO DISMISS<br><br>CTRM: 16<br>Judge: Hon. Jeffrey T. Miller |

**TABLE OF CONTENTS**

|      |                                              | Page  |
|------|----------------------------------------------|-------|
| i.   | TABLE OF CONTENTS...........................................| i     |
| ii.  | NOTE ON AUTHORITY..........................................| ii    |
| I.   | BACKGROUND ......................................................| 1     |
| II.  | PERSONAL JURISDICTION ..................................| 1 - 4 |
| III. | STATEMENT OF CLAIMS – re Rule 12(b)(6) ........| 4 - 6 |
|      | A)   Claim Under AntiCybersquatting           |       |
|      | B)   Claims Under Trademark Statute           |       |
| IV.  | VENUE ....................................................................| 6     |
| V.   | OPPOSITION TO MOTION TO TRANSFER.............| 7     |
| VI.  | ALTERNATIVE MOTION FOR LEAVE TO AMEND..| 8     |
| VII. | MOTION TO STRIKE .............................................| 9     |
| VIII.| CONCLUSION ........................................................| 9     |

## NOTE ON AUTHORITY

This paper offers no new cases, statute, nor authority other than that which is already of record, in particular, via Defendants' Memorandum. This following argument relies solely upon those well described and accurately presented basis.

I. **BACKGROUND**

This action includes a dispute between a Trademark owner and a Cybersquatter over the trade name "Couture Today" and its ownership. Trademark owner Plaintiff took proper legal steps proscribed by trademark law to secure an ownership interest in the tradename. Cybersquatter Defendant holding Plaintiff's tradename hostage via an illicit *domain name registration* has no legal basis and never had any legal basis for which he can claim ownership of the name. Registration of a domain name per se does not impart trademark rights and privileges with regard to a tradename.

Plaintiff's First Amended Complaint filed February 21, 2008 is admittedly less than perfectly well plead, however in the interest of proceeding to the merits, this Court will easily find personal jurisdiction, *sufficiently* plead causes of action, and proper venue – and should reject and deny Defendants' Motions to Dismiss.

In addition, this court may also find Defendants' sworn Declarations less than genuine and truthful, and might additionally levy sanctions on Defendants and each of them so that they might be encouraged to be more forthcoming with the truth in later proceedings.

II. **PERSONAL JURISDICTION**

While allegations set forth in Plaintiff's first amended complaint (FAC) were inadvertently less than complete, basis for personal jurisdiction may nevertheless be found there. Further, as Defendants now argue with specificity in their Motion to Dismiss on issues relative to personal jurisdiction, it is proper to introduce here in this Opposition, the following contradictory positions.

Plaintiff accepts as accurate authority set forth in Defendants' memorandum, page 2, line 17, through page 3 line 16 as basis for personal jurisdiction and incorporates that record herein by reference.

General Jurisdiction

Amini Innovation Corp. 497 F.Supp.2d at 1101-02 tells us that when a defendant makes sales, or solicits or engages in business, serves the states market, (among others), *general jurisdiction* may be found.

In striking contrast to Defendants' declarations which aver that Defendants: do not make

sales; nor solicit business; nor serve California's markets, it is clear that the opposite is the actual case. Defendants do in fact make sales, solicit business, and explicitly direct services to California and its citizens. See Plaintiff's declaration (PAGE's decl.) attached hereto. Accordingly, the Court most clearly does have general jurisdiction under California's long arm statute.

Specifically, Defendants' web enterprises include a plurality of web control type user interface objects designed by them, those web controls used in conjunction with sales offers are explicitly directed to California. The web controls indicate Defendants' explicit intention to capture business from the California market. These controls are not part of some default inadvertently integrated with Defendants' websites, but rather, they are included by Defendants own design and engineering as part of his web businesses.

As Defendants' business activities are directed specifically at California and Defendants affirmatively targeted California in their webpage design - this Court should find in favor of general jurisdiction.

### *Defendants' Argument is defective as follows:*

Defendants argue the Court does not have *general jurisdiction* over defendants in writing: "Neither Defendant can be said to have substantial, continuous, or systematic contacts with the forum" pointing to Defendants' declarations. Despite the sworn statements in those declarations, Defendants do in fact have substantial, continuous and systematic contacts with California as shown above.

Defendants continue: "The extent of the Defendants' contacts with the State of California...(limited to long past residency)" This is not a fair representation of truth, as it is clear Defendants have had and continue to have ongoing business activities in California.

While Defendants' claims to Florida residency and "brief" visits to California may be true, these are not the actions which give rise to personal jurisdiction, but rather their extensive web enterprise businesses – which clearly seek out business activity in California. Thus, Defendants argument from personal jurisdiction should fail for want of consideration of those business activities to which the argument is silent.

While *general jurisdiction* is sufficient in and of itself for purposes of personal jurisdiction, the Court will also find it additionally has *specific jurisdiction*.

Specific Jurisdiction

Defendants' Memorandum have it precisely stated with respect to authority regarding specific jurisdiction and those authorities are hereby incorporated without deviation or omission; in interest of brevity, are not repeated here.

This claim arises out of and relates to Defendants' forum related business activities as required in part(2) of Harris Rutsky & Co. Defendants' web enterprise businesses including registration of domain names and maintenance of web site enterprise businesses including but not limited to: anestaweb.com; anesthesiologistassistant.com; and couturetoday.com, constitutes purposeful availment as those web businesses clearly create extensive business contacts with California.

In deciding this question the Ninth Circuit sometimes uses a test under Zippo Mfg Co.$^{\text{(of record)}}$ which includes web sites of three categories including those characterized as: 1) 'passive'; 2) 'interactive'; and 3) 'commercial'. It has been shown (see PAGE's decl.) that Defendants' web enterprises are at least *highly interactive* and are most certainly *commercial.*

Defendants' website operations (from which this action arises) are quite clearly heavily commercial and highly interactive. Where a web site is merely "interactive", a court *may* find personal jurisdiction in Internet cases. As it is readily apparent that Defendants are engaged in extensive Internet operations including sales of memberships to Californians, via a plurality of interrelated and interconnected web pages and web sites, the only reasonable conclusion is that *specific jurisdiction* is also supported.

Defendants' Argument is defective as follows:

With regard to Defendants' argument which relies upon substantial nonsense, Defendants have errored.

Defendants' memo argues: "Defendant sits at this 'opposite end' of the spectrum" meaning the most passive of the Zippo Mfg. spectrum web site characterizations. Defendants' argument only takes into account a but a *single web page* of the entire web enterprise of web sites and web pages created, served and maintained by Defendants. However, Defendants' web enterprise is indivisible as each of various web pages directly links to others in one cooperative system.

Further, even where one considers the most limiting single page in Defendants' argument,

they are in error to suggest visitors cannot engage in any interactive activity through that single page. Indeed, that page includes at least five distinct interactive web control components including: 1) hyperlinks, 2) real-time updated calendar elements, 3) tool tip windows, 4) JavaScript, 5) automated advertisement rotation banners, et cetera. Each of these is an 'interactive' web component and thus the single web page from which they argue as 'passive' is in fact highly interactive.

As Defendants' contacts with California are extensive and were made purposefully and by explicit design, voluntarily and intentionally by Defendants, <u>both</u> *general* and *specific* jurisdiction are well supported and an immediate finding of personal jurisdiction should be declared by this Court.

### III. <u>STATEMENT OF CLAIMS – re Rule 12(b)(6)</u>

#### A) <u>Claim Under AntiCybersquatting</u>

As to the First Cause of Action - CyberSquatting, Defendants suggest a failure of the allegation in the slightest of manner - an extreme technicality. It is quite clear from the pleading the allegations support a "cognizable legal theory against a defendant" as required by Fed.R.Civ.P. 12(b)(6).

Plaintiff has properly alleged in the First Cause of Action, paragraph 3, that a trademark application was filed - and this act absolutely and necessarily includes an implicit allegation of distinctiveness. Accordingly, all the necessary elements of 15 U.S.C. §1125(d) are included in the First Amended Complaint.

Defendants and then put forth (on page 9, lines 10 - 17) this defective argument:

> "in fact, Plaintiff has not in connection with his claim for alleged CyberSquatting alleged that his mark is or has ever been distinctive. Moreover, Plaintiffs clear allegations contradict any finding that might support this element. Specifically, Plaintiff has alleged that 'Defendant GREEN registered the domain name... on June 18th, 2000.' However, Plaintiff makes no allegation connected with his applied for mark dating prior to April 4, 2007. Plaintiff's allegation regarding the supposed distinctiveness of his applied-for mark is conclusory and not supported by any factual allegations "

Defendants somehow believe that their domain name registration of June 18, 2000 renders Plaintiff's mark 'not distinct'. However this is totally inconsistent with any meaning of 'distinct' as set forth in the Manual of Trademark Examining Procedures, the USPTO, and the TTAB. Further, the USPTO has since (January 2008) reconfirmed and finalized their earlier finding *for distinctiveness* in agreement with Plaintiff's position on this point (see PAGE decl. at Exhibit 13) in issuing a Notice of Allowance. There is no longer need for any explicit allegation of distinctiveness - the question of distinctiveness is fully settled as it is inherent in proceedings long concluded at the USPTO.

Since the First Amended Complaint includes allegations as to the trademark application - that allegation inherently alleges distinctiveness.

With regard to Defendants' position expressed on page 11, lines 1 - 8, Plaintiff has alleged the contact information is false. If Defendants chose to deny that allegation - those denials should be presented in an answer to the complaint - with discovery and trial used as means to finally settle the issue. To merely state Plaintiff's allegations are "unsupported conclusions of law" is nonsense and does not belong as part of any Rule 12(b)(6) dismissal consideration.

Defendants write further: "Plaintiff's allegations concerning Defendants' renown as a CyberSquatter are ridiculous". Whether or not Defendants are truly renown CyberSquatters is yet another issue for further examination and consideration via appropriate due process. Plaintiff would prefer to settle this point by discovery and trial and believe Defendants' denial here also is not suitable to support any Rule 12 (b)(6) dismissal.

Defendants also write (apparently in support of their request for Rule 12 (b)(6) dismissal):

> "Plaintiff's allegations that Defendants, in bad faith, offered the www.couturetoday.com domain name for sale are misleading and false. Defendants have not offered to sell the domain name to Plaintiff."

It is again Plaintiff's position that this point also is ripe for further consideration at trial after appropriate discovery. Plaintiff says: *'Defendant did'*; Defendants say: *'they didn't'*. Clearly, we have an impasse which deserves due judicial process. Defendants' denials should be taken up in an appropriate answer but not in a Rule 12(b)(6) request for dismissal.

Plaintiff is grateful for Defendants' attempt at an expeditious conclusion to this dispute, however Plaintiff prefers that we not conduct the entire trial and discovery in this Rule 12(b)(6) motion to dismiss.

The motion should be immediately denied without further consideration as the claims against Defendants are quite clear to both parties.

B)    <u>Claims Under Trademark</u>

The only thing interesting about Defendants very lengthy (five-page) discussion regarding the Second Cause of Action is the word "registrant". PAGE registered a trademark application for "Couture Today" with the USPTO and he is the 'registrant'. While there may be some valid dispute regarding the precise meaning of 'Applicant' v. 'Registrant' with a view to the code in 15 U.S.C. §1114(1)(a), that point will soon be moot as the USPTO has only to assign a registration number to Plaintiff's trademark application - all substantive issues being fully settled and Notice of Allowance having already issued - the mark will be a registered mark long before this minor question can be entertained.

Should Defendants choose to drop their Rule 12(b)(6) position and argue this dispute is not yet ripe for litigation, Plaintiff will agree to hold the Second Cause of Action in abeyance until the USPTO finally yields the registration number – likely to be any day now.

IV.    <u>VENUE</u>

28 U.S.C. 1391(b) states in pertinent part: a civil action( ) may ( ) be brought in ( )(2) a District in which a substantial part of the events or omissions give rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

While Defendants' entire argument of page 19 lines 1 through 7, is factually inconsistent

with the record. Defendants *do* operate highly interactive commercial web sites. Defendants *do* target consumers in the District. Defendants *have made sales* in the District (see PAGE's decl.), despite their incorrect or false testimony to the contrary.

Further, Defendants' memo is silent as to "substantial portion of the acts...." but instead, merely declares "venue not proper" in an argument. Indeed a substantial portion of the acts complained of did occur in the District. Offers to sell the domain name were made in California to Californians. The AnestaWeb highly interactive web enterprise was designed with purpose to attract and serve the California market.

Accordingly, venue is proper in the Southern District of California.

## V.   OPPOSITION TO MOTION TO TRANSFER

"a district court *may* transfer any civil action..."

Defendants present eight factors of Jones [of record] to suggest this matter be transferred to the District Courts of Florida. While that may be convenient for Defendants, none of the eight factors are compelling as required to warrant transfer.

### First Factor

Contrary to Defendants' assertion, PAGE and GREEN *have* negotiated, but not entered, an agreement, that telephone negotiation taking place in precisely equal aspects in California and Florida.

### Second Factor

Federal District Courts in Florida *may be* equally well versed in trademark law as suggested by Defendants – however this is not certain and Defendants offer no evidence to suggest same.

### Third Factor

Plaintiff prefers Southern District of California not because it 'forces Defendants to defend in far away court' as argued by Defendants, but rather because the forum is most suitable for all parties.

### Fourth and Fifth Factors

Again, Defendants claim "they do not conduct business in the forum", which is plainly wrong, incorrect, and dishonest. They, upon their own will and volition chose to become the self described: "global" website company (see PAGE's decl.) – and now is too late to argue they are

'only present in Florida'. Going global comes with responsibilities; and one of those is answering to this Court.

### Sixth Factor

Cost of litigation will be identical for the two fora. Discovery is expected to be largely limited to written discovery – perhaps a single FLA-SAN journey for each Plaintiff and Defendant would be the full extent of what is necessary to complete discovery.

Defendants are well represented by very capable local counsel Hill, Farrer & Burrill LLP. Plaintiff has no relationship with Florida counsel and would find it extremely burdensome to establish relationship there and repeatedly visit the courthouse as necessary in the *prosecution* of a civil matter. Presently, Plaintiff enjoys the easy access and opportunity to visit the local courthouse to file required documents there - more than 8 personal visits so far; visits which would be impossible in Florida. The expense of remote prosecution is far greater for Plaintiff than a remote defense for Defendants.

### Seventh Factor

Plaintiff will agree to relieve 'local friends and family' of Defendants from the obligation to testify as to Defendants' good names in person and will accept their affidavit testimony as if it were given personally.

### Eighth Factor

Sources of proof will largely not lie with Florida resident non-party witnesses, but rather, with Defendants' hard drives. Plaintiff expects very little or no material evidence to come from these 'Floridian non-party witnesses'.

Accordingly, none of the eight factors to be considered for transfer are even remotely close to that which might warrant such venue change. As such, Plaintiff petitions the Court to reject and deny their Motion to transfer.

## VI. ALTERNATIVE MOTION FOR LEAVE TO AMEND

Should the Court find Plaintiff's First Amended Complaint insufficient in any regard, Plaintiff hereby motions for leave to amend the complaint to better place it in condition for proceeding on the merits.

## VII. MOTION TO STRIKE - FRCP 12(f)(2)

FRCP 12(f)(2) Plaintiff takes exception and invites Defendants' apology for comments written in their Memo and further comes now with this motion to strike. Specifically, Defendants' write: "By Plaintiff's own admission, he has manipulated a similar scheme to his benefit, and to the detriment of an otherwise lawful domain owner, at least once before" and further: "that it will be clear that the Plaintiff is nothing more than a serial domain highjacker". These statements are inaccurate, untrue, scandalous, immaterial, and impertinent matter. In accordance with Federal Rules, are subject to be stricken from the record. Plaintiff does now supplicate this Courts' agreement and moves for an order striking these statements.

## VIII.  CONCLUSION

Admittedly the First Amended Complaint may not be perfectly well pled with great attention to every conventional legal device and strict adherence to Federal Rules including numbering of paragraphs and positioning of captions, due in part to the non-attorney Plaintiff in pro se; however, it nevertheless sets forth valid, reasonable and compelling claims against Defendants and is deserving of a proper answer and defense from them.

Personal jurisdiction is clearly proper.

Venue is reasonable and fair.

This Court has the authority to, and should dismiss Defendants' long-winded and thin arguments and deceptive declarations, and hear the matter as to the merits.

DATED:    March 15, 2008

Joseph Page
Plaintiff